# In the United States Court of Federal Claims

No. 17-535C
Filed December 21, 2017
NOT FOR PUBLICATION

| | |
|---|---|
| THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

Contract Disputes Act; 41 U.S.C. §§ 7101, *et seq*.; RCFC 12(b)(1); Subject-Matter Jurisdiction.

*Christopher J. Neumann*, Law Department of the Port Authority of New York and New Jersey, New York, NY, for plaintiff.

*Michael D. Austin*, Trial Attorney, *Robert E. Kirschman, Jr.*, Director, *Elizabeth M. Hosford*, Assistant Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, United States Department of Justice, Washington, DC; *Redding C. Cates*, Of Counsel, Office of the General Counsel, United States Postal Service, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

In this Contract Disputes Act action, plaintiff, the Port of Authority of New York and New Jersey (the "Port Authority"), seeks a declaratory judgment requiring the United States Postal Service (the "USPS") to indemnify it from any damages that the Port Authority may pay in connection with a civil tort action currently pending before the Superior Court of Monmouth County for the State of New Jersey, pursuant to the terms of a lease agreement by and between the Port Authority and the USPS.  Compl. ¶¶ 1, 6, 8-9; Mot. at 2.  The government has moved to dismiss this action for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss.

II.     **FACTUAL AND PROCEDURAL HISTORY**[1]

   A. **Factual Background**

In this Contract Disputes Act action, the Port of Authority seeks a declaratory judgment requiring the USPS to indemnify it from any damages that plaintiff may pay in connection with a settlement or judgment entered in a pending civil tort action regarding an automobile accident that occurred at the John F. Kennedy ("JFK") International Airport, and certain other relief. Compl. ¶¶ 1, 6, 8-9; Mot. at 2. Specifically, the Port Authority alleges in the complaint that the USPS has not satisfied its obligation under the terms of a lease agreement that the USPS entered into with the Port Authority to "indemnify and hold harmless Port Authority 'from and against all claims and demands of third persons . . . arising out of the acts or omissions of Lessee [United States Postal Service], its officers, and employees . . . at the Airport . . .'" Compl. ¶¶ 9-10 (alterations in original) (quoting the Lease Agreement at ¶ 12).

In addition, the Port Authority alleges that the USPS has also failed to satisfy its obligation under the lease agreement to maintain a "Commercial of General Liability Insurance and Commercial Automobile Insurance" policy for itself and the Port Authority. *Id.* ¶¶ 11-12. As relief, the Port Authority seeks a declaratory judgment, monetary relief, attorneys' fees, and certain other relief. *Id.* at Relief Sought.

   1. **The Accident And The Lease Agreement**

As background, the Port Authority's CDA claims arise from an unfortunate automobile accident involving a former USPS employee, which occurred at the JFK Airport in 2012. On May 16, 2012, an automobile accident occurred involving vehicles operated by a former USPS employee, Michael Bartow, and a Port Authority employee, Nicholas Reif. Compl. ¶¶ 5-7; Pl. Opp. at 1. After the accident, Mr. Bartow filed a civil tort action against the Port Authority in the Superior Court of Monmouth County for the State of New Jersey (the "Bartow Litigation"). Compl. ¶ 5; Pl. Opp. at 1; *see also Michael Bartow v. Port Authority of New York and New Jersey and Nicholas Reif*, No.: MON-L-3624-12.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."), the government's motion to dismiss ("Def. Mot."), the appendix to the government's motion to dismiss ("Def. App."), and plaintiff's opposition to the government's motion to dismiss (Pl. Opp."). Unless otherwise noted, the facts recited herein are undisputed.

In 2008, the USPS and the Port Authority entered into a lease agreement to facilitate the lease of the USPS's building at the JFK Airport (the "Lease Agreement"). Compl. ¶ 8; Def. Mot. App. at A1, A3, A5. There are two provisions in this Lease Agreement that are relevant to the Port Authority's claims.

First, paragraph 12 of the Lease Agreement addresses the USPS's obligation to indemnify the Port Authority and provides that:

> The Lessee shall indemnify and hold harmless Port Authority, it [sic] Commissioners, officers, employees and representatives, from and against ( [sic] and shall reimburse Port Authority for Port Authority's costs and expenses including legal expenses incurred in connection with the defense of all claims and demands of third persons including but not limited to claims and demands for death or personal injuries, or for property damages, arising out of any default of the Lessee in performance or observing any term or provision of this Agreement, or out of the use or occupancy of the premises by the Lessee or by others with its consent or out of any of the acts or omissions of the Lessee, its officers, employees, guests, invitees and business visitors on the premises, or arising out of the acts or omissions of the Lessee, its officers and employees elsewhere at the Airport, including claims and demands of the City of New York from which Port Authority derives its rights in the Airport, for indemnification, arising by operation of law or through agreement of Port Authority with the said city.

Compl. ¶ 10. Second, paragraph 49 of the Lease Agreement addresses the USPS's obligation to obtain certain insurance and provides, in relevant part, that:

> (a) The Lessee, during the term of this Agreement, in its own name as insured and including Port Authority as an additional insured, shall maintain and pay the premiums on a policy or policies of Commercial General Liability Insurance covering bodily injury, including death and property damage liability, none of the foregoing to contain care, custody or control exclusions, and providing for coverage in not less than the limit set forth below and Commercial Automobile Liability Insurance covering owned, non-owned and hired, vehicles and including automatic coverage for newly acquired vehicles, coverage in not less than the limits set forth below. Each such policy or policies of insurance shall also provide or contain an endorsement providing that the protections afforded the Lessee thereunder with respect to any claim or action against the Lessee by a third person shall pertain and apply with like effect with respect to any claim or action against the Lessee by Port Authority, and shall also provide or contain an endorsement providing that the protections afforded Port Authority thereunder and with respect to any claim or action against Port Authority by the Lessee shall be the same as the protections afforded the Lessee thereunder with respect to any claim or action against the lessee by a third person as if Port Authority were the named insured thereunder, but such endorsement shall not limit, vary. [sic] Change or affect the protections afforded

> Port Authority thereunder as an additional insured.  The said policy or policies of insurance shall also provide or contain a contractual liability endorsement covering the obligations assumed by the Lessee under Section 12 of this Agreement.

*Id.* ¶ 12.

### 2. The Port Authority's Letters

Following the commencement of Mr. Bartow's lawsuit against the Port Authority, plaintiff sent several letters the USPS regarding the indemnification requirement under the terms of the Lease Agreement.  Specifically, on March 22, 2017, the Port Authority sent a letter to the USPS's contracting officer requesting that the USPS indemnify the Port Authority in connection with the Bartow Litigation, pursuant to the terms of the Lease Agreement.  *Id.* ¶¶ 9-10; Pl. Opp. at 2; Def. Mot. at 2-3.  This letter states in relevant part that:

> Please accept this letter as a request for indemnification in [Bartow v. Port Authority of New York and New Jersey Docket No.: MON-L-3624-12] pursuant to Section 12 of Port Authority of New York and New Jersey's (hereinafter "Port Authority") Lease (hereinafter "Lease") . . . with the United States Postal Service (hereafter "USPS") at the USPS' Facility (Building 250) at John F. Kennedy International Airport.. . . . As stated above Port Authority seeks indemnification pursuant to Section 12 of the USPS (Building 250) Lease with Port Authority . . . .
>
> In addition, pursuant to Section 49 of the Lease the USPS is obligated to provide in its own name as insured and including Port Authority as an additional insured," [sic] policies of Commercial General Liability Insurance and Commercial Automobile Insurance . . . .  Upon information and belief, to date the USPS has failed to provide either Commercial General Liability Insurance or Commercial Automobile Insurance with Port Authority named as an additional insured which were required pursuant to the Lease.
>
> Please be advised that there is a settlement conference regarding the above referenced case on April 21, 2017 and a trial date in the Supreme Court of New Jersey, Monmouth County on April 24, 2017.  As such, time is of the essence and your prompt response to Port Authority's request for indemnification is respectfully requested.  Please contact the undersigned with the USPS decision with regard to Port Authority's request for indemnification within 5 days . . . .

Def. Mot. App. at A1-A2.

On March 27, 2017, the Port Authority sent a second letter to the USPS's contracting officer requesting that the USPS indemnify plaintiff in connection with the Bartow Litigation. Pl. Opp. at 2; Def. Mot. at 2-3; Def. Mot. App. at A3-A4.  This letter states, in relevant part, that:

>In the letter of March 22, 2017, Port Authority requested that a representative of the USPS contact the undersigned within 5 days of receipt of the letter requesting the USPS' position on Port Authority's request for indemnification in the above referenced case. We have not heard from anyone from the USPS and we can only assume at this point that the USPS has determined not to meet its obligation under its lease with Port Authority. If our assumption regarding the USPS' refusal to indemnify Port Authority is incorrect, kindly inform Port Authority within three (3) days.
>
>In light of the upcoming settlement conference and trial date (April 21 and April 22, 2017 respectively) your prompt attention to this matter as detailed above, is appreciated.

Def. Mot. App. at A3.

Lastly, on March 31, 2017, Port Authority sent a third letter to the USPS's contracting officer that again requested that the USPS indemnify plaintiff in connection with the Bartow Litigation. Pl. Opp. at 2; Def. Mot. at 2-3; Def. Mot. App. at A5. This letter states, in relevant part, that:

>By ignoring our related requests for compliance with its contractual obligations, the USPS has apparently opted to repudiate those obligations. We hope this is not the case. But if we do not hear from a representative of the USPS by Wednesday, April 5, 2017, we will seek judicial assistance to hold the USPS to its commitments.

The USPS's contracting officer has not responded to any of the Port Authority's letters. Def. Mot. at 2-3; Pl. Opp. at 2.

### B. Procedural History

The Port Authority commenced this action on April 17, 2017. *See generally* Compl. On July 28, 2017, the government filed a motion to dismiss this action for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1). *See generally* Def. Mot.

On September 19, 2017, the Port Authority filed a response and opposition to the government's motion to dismiss by leave of the Court. *See generally* Pl. Opp. On October 20, 2017, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply.

The government's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## IV. LEGAL STANDARDS

### A. Jurisdiction And RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also* RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction, and plaintiff must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject-matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006) (citations omitted); *see also* RCFC 12(h)(3).

In this regard, the United States Court of Federal Claims is a Court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a jurisdictional statute. It does not create any substantive right enforceable against the United States for money damages. Rather, the Tucker Act merely confers jurisdiction upon the Court whenever that substantive right exists. *United States v. Testan*, 424 U.S. 392, 398 (1976). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x. 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005)).

**B. The Contract Disputes Act**

Pursuant to the Tucker Act, this Court possesses "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act or the "CDA"]." 28 U.S.C. § 1491(a)(2); *see also Kellogg Brown & Root Servs., Inc. v. United States*, 115 Fed. Cl. 46, 51 (2014) (citations omitted) ("The Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101–7109 (Supp. V 2011), is a money-mandating source of law sufficient to confer jurisdiction [upon the Court of Federal Claims] under the Tucker Act, 28 U.S.C. § 1491 (2012)."). A plaintiff must meet two jurisdictional prerequisites to bring a claim under the CDA: (1) submit a proper claim to the relevant contracting officer, which must be properly certified if the amount requested is above $100,000; and (2) obtain a final decision on that claim. 41 U.S.C. § 7103(a); *see also M. Maropakis Carpentry, Inc.*, 609 F. 3d 1323, 1328 (Fed. Cir. 2010) (citation omitted) ("[T]he contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision."); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575-76 (Fed. Cir. 1995).

In regards to what constitutes a valid CDA claim, the United States Court of Appeals for the Federal Circuit has explained that the Court looks to the Federal Acquisition Regulations ("FAR") implementing the CDA for the definition of a claim, because the CDA does not define the term "claim". *Id.* at 1327 (citation omitted). The FAR defines a claim to be:

> A written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

*Id.* (quoting 48 C.F.R. § 33.201). The Federal Circuit has also explained that "[w]hile a CDA claim need not be submitted in any particular form or use any particular wording, it must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *Id.* (quoting *Contract Cleaning Maint., Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1997)).

In this regard, the Federal Circuit has also explained that, although a claim must "indicate to the contracting officer that the contractor is requesting a final decision," an explicit request for a final decision is not required "as long as what the contractor desires by its submissions is a

final decision . . . ." *Id.* at 1327-28 (quoting *Ellett,* 93 F.3d at 1543). But, a claim "based merely on intent to assert a claim without any communication by the contractor of a desire for a contracting officer decision" falls short of what is required. *Id.* at 1328 (citation omitted).

This Court has also recognized that a contractor may obtain either an actual or a deemed final decision on a CDA claim. *Claude E. Atkins Enters., Inc. v. United States,* 27 Fed. Cl. 142, 143 (1992). For claims of $100,000 or less, the CDA provides that "[a] contracting officer shall issue a decision on any submitted claim . . . within 60 days from the contracting officer's receipt of a written request from the contractor that a decision be rendered within that period." 41 U.S.C. § 7103 (f)(1); *see also Witherington Constr. Corp. v. United States*, 45 Fed. Cl. 208, 210 (1999). For claims over $100,000, the CDA provides that the contracting officer shall, within 60 days of receipt of the submitted certified claim: "(A) issue a decision; or (B) notify the contractor of the time within which a decision will be issued." 41 U.S.C. § 7103(f)(2).

The CDA also requires that a contracting officer's decision shall be "issued within a reasonable time," which is calculated by "taking into account such factors as the size and complexity of the claim and the adequacy of information in support of the claim provided by the contractor." 41 U.S.C. § 7103(f)(3). If the contracting officer denies the claim within the required time period, that claim is actually denied. *Id*. A failure to issue a decision within the required time "is deemed to be a decision by the contracting officer denying the claim". 41 U.S.C. § 7103(f)(5). And so, a denial, actual or deemed, authorizes an appeal or action on the claim. *Id*.

In addition, this Court has held that when a CDA claim "is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation,' thereby 'divest[ing] the contracting officer of his authority to issue a final decision on the claim.'" *Witherington Constr. Corp.*, 45 Fed. Cl. at 211 (quoting *Sharman Co. v. United States,* 2 F.3d at 1571). And so, this Court has also held that:

> [A] claim premature for lack of a contracting officer's final decision does not ripen into a mature claim, while suit is pending, with the passage of sixty (60) days. Once plaintiff's claim . . . became the subject of litigation in this court, upon the filing of the original complaint, the authority to resolve that claim was withdrawn from the contracting officer and resided within the exclusive authority of the Attorney General . . . . Under these circumstances, plaintiff's claim . . . cannot be deemed denied, and the court must dismiss [this claim] on jurisdictional grounds for lack of

a contracting officer's final decision. Furthermore, plaintiff may not rely on its amended complaint to cure any jurisdictional defect in its premature appeal of a 'deemed denial' . . . . The general rule is that 'jurisdiction must be determined' at the time the original complaint was filed.

*Kellogg Brown & Root Servs., Inc.*, 115 Fed. Cl. at 56 (quoting *Sipco Servs. & Marine Inc. v. United States*, 30 Fed.Cl. 478, 485 (1994)).

V.   **LEGAL ANALYSIS**

**A. The Court Does Not Possess Jurisdiction To Consider Plaintiff's Claims**

The government has moved to dismiss this Contract Disputes Act matter for lack of subject-matter jurisdiction, upon the ground that the Port Authority failed to submit a valid claim to the USPS's contracting officer−or to obtain a final decision from the contracting officer−prior to commencing this matter. *See generally*, Def. Mot.; RCFC 12(b)(1). And so, the government requests that the Court dismiss this matter for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).

The Port Authority counters in its opposition to the government's motion to dismiss that the Court may consider its CDA claims because the Port Authority submitted a valid claim to the USPS's contracting officer "for indemnification and defense." Pl. Mot. at 4. But, the Port Authority acknowledges that it did not obtain a final decision from the USPS's contracting officer prior to commencing this matter. And so, plaintiff requests that, if the Court finds that "its claims were not ripe because 60 days had not passed" prior to obtaining a final decision from the USPS's contracting officer, it be given the opportunity to cure this jurisdictional defect, or that the Court dismiss this matter without prejudice. *Id.* at 5.

For the reasons discussed below, the undisputed facts in this matter show that the Port Authority has not complied with the CDA's jurisdictional prerequisite to obtain a final decision from the USPS's contracting officer before commencing this litigation. And so, the Court **GRANTS** the government's motion to dismiss and **DISMISSES** the complaint for lack of subject-matter jurisdiction. RCFC 12(b)(1).

There is no genuine dispute among the parties that the Court does not possess subject-matter jurisdiction to consider any of the Port Authority's CDA claims. Def. Mot. at 4; Pl. Opp. at 5. In fact, the Port Authority acknowledges in its response and opposition to the government's

motion to dismiss that it did not obtain a final decision from the USPS's contracting officer before commencing this action.  Pl. Opp. at 5.

It is well-established that the Port Authority must submit a proper claim to the USPS's contracting officer, and obtain a final decision on that claim, to pursue a CDA claim in this Court.  41 U.S.C. § 7103(a); *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575-76 (Fed. Cir. 1995).  Because there is no dispute that the USPS's contracting officer has not issued a final decision with respect to any of the Port Authority's letters regarding the indemnification requirement in the Lease Agreement, the Port Authority has not met its burden to show that this Court possesses subject-matter jurisdiction to consider its CDA claims.  Def. Mot. at 3; Pl. Opp. at 2.  *See Maropakis*, 609 F.3d 1323 (Fed. Cir. 2010).

The Port Authority also fails to show that there has been a deemed denial of its CDA claims.  *Claude E. Atkins Enters., Inc. v. United States,* 27 Fed. Cl. 142, 143 (1992) (Recognizing that a contractor may obtain either an actual or a deemed final decision on a CDA claim.).  Under the CDA, a contracting officer's failure to issue a final decision within 60-days after receipt of a valid CDA claim is deemed to be a decision by the contracting officer to deny the claim.  41 U.S.C. § 7103(f)(5).  And so, such a deemed denial authorizes an action on the claim before this Court.  *Id*.

But, the Port Authority acknowledges here that it commenced this action before the 60-day period for the USPS's contracting officer to issue a final decision had elapsed.  Pl. Opp. at 4-5; *see also* Def. Mot. at 5.  In this regard, there is no dispute that the Port Authority sent three letters to the USPS's contracting officer regarding the indemnification requirement in the Lease Agreement and that plaintiff sent the first of these letters on March 22, 2017−just 26 days before the Port Authority commenced this action on April 17, 2017.  Pl. Opp. at 2.

This Court has long held that a "claim premature for lack of a contracting officer's final decision does not ripen into a mature claim while suit is pending with the passage of sixty (60) days."  *Kellogg Brown & Root Servs. Inc. v. United States*, 115 Fed. Cl. 46, 56 (2004) (quoting *Sipco Servs. & Marine Inc. v. United States*, 30 Fed. Cl. 478, 485 (1994)).  Given this, the Port Authority cannot show that its CDA claims have been actually or deemed denied by the USPS's

contracting officer. And so, the Court must dismiss the Port Authority's CDA claims for lack of subject-matter jurisdiction.[2]

## VI. CONCLUSION

In sum, the Port Authority simply has not met its burden to show that the Court possesses subject-matter jurisdiction to consider any of its CDA claims. And so, the Court must dismiss this action pursuant to RCFC 12(b)(1).

For the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss; and

2. **DISMISSES** the complaint without prejudice.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

                                                           s/ Lydia Kay Griggsby
                                                           LYDIA KAY GRIGGSBY
                                                           Judge

---

[2] Because the Court concludes that the Port Authority did not obtain a contracting officer's final decision on its claims before commencing this action, the Court does not reach the issue of whether plaintiff's March 22, 2017, March 27, 2017, and/or March 31, 2017, letters constitute a valid CDA claim.

11